UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

07CR262S

**ORDER**

BING LU,
YING DONG,

Defendants.

This matter is referred to the undersigned to hear and determine pretrial matters pursuant

to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed

findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C.

§ 636(b)(1)(A) (Docket No. 29).

The instant matters before the Court are defendants' separate omnibus motions (Docket

Nos. 24[1], 25[2]), and the Government's motions for reciprocal discovery (Docket No. 26, Bing Lu

Response at 13-14; Docket No. 27, Ying Dong Response at 8-9).  Defendant Ying Dong moves

for discovery and for a bill of particulars, among other relief sought (Docket No. 24).  Defendant

---

[1]In support of this motion, defendant Ying Dong filed her attorney's affirmation with
attachments (discovery and particularization demands), Docket No. 24.  In opposition, the
Government filed its Response, Docket No. 27 (hereinafter "Docket No. 27, Ying Dong
Response").

[2]In support of this motion, defendant Bing Lu filed his attorney's affirmation, Docket No. 25.
In opposition, the Government filed its Response, Docket No. 26 (hereinafter "Docket No. 26,
Bing Lu Response").

Bing Lu also moves for discovery and a bill of particulars, and he moves to compel the identity of informants, disclosure of <u>Giglio</u> materials, production of Jencks Act material, and to suppress physical evidence (Docket No. 25).  Ordinarily, Bing Lu's motion to suppress would be considered in a separate Report & Recommendation, but given the extent of discovery in this case, the suppression motion is considered here.  The motions were argued on June 17, 2008, and the motions were deemed submitted on that date (Docket No. 32).

## BACKGROUND

Defendants were indicted, on November 1, 2007, for failure to file a factual statement about an alien female they were harboring, in violation of 18 U.S.C. § 2424, and illegal harboring of an alien, in violation of 8 U.S.C. § 1324 (Docket No. 14, Indictment).  Defendants were charged with having a business (the Eastern Spa) and a residence in Tonawanda, New York, and using them to harbor aliens for the purpose of prostitution and failed to render a written statement about these aliens to the Commissioner of Immigration and Nationality (<u>id.</u>).

*Ying Dong's Motion*

Ms. Ying Dong moves for discovery of her statements, her criminal history, reports of any physical or mental examinations and other scientific reports, expert statements, documents having reference to pretrial identification procedures of Ying Dong, photographs, charts and summaries, intercepted communications, preservation of rough notes, all evidence belonging to or otherwise seized from defendant (Docket No. 24, Ying Dong Def. Atty. Affirm. Ex. A, Demand Nos. 1-10).  She seeks notification of the Government's intention to use Federal Rule of Criminal Procedure 16 evidence that may be subject to a motion to suppress (<u>id.</u> Ex. A, Demand

No. 11).   She also seeks character evidence, Jencks Act material, list of witnesses, investigatory reports, and Brady material (id. Ex. A, Demand, Nos. 12-16).

Ying Dong also seeks particularization of the legal definition of "prostitution" as alleged in the Indictment; the date, location, participants, and conduct constituting instances of "prostitution" at the Eastern Spa; the date, location, participants, and conduct constituting "other immoral purpose" as alleged; the names, addresses, telephone numbers, and time periods each alien was kept, maintained, controlled, supported and harbored by defendant at the Eastern Spa (id. Ex. B).

The Government stated during oral argument that much of the discovery requests will be complied with, some produced up to the date of trial.   The Government contends that has produced and intends to continue to produce discoverable material (Docket No. 27, Ying Dong Response at 2, 3).   The Government also moved for reciprocal discovery (Docket No. 27, at 8-9).

*Bing Lu's Motions*

Mr. Bing Lu also seeks a Bill of Particulars as to where defendant committed the offense alleged in Count One of the Indictment, when and the manner in which it occurred (Docket No. 25, Def. Atty. Affirm. ¶ 5), and similar specificity as to Count Two (id. ¶ 6).

He seeks discovery under Rule 16, and he also moves to compel disclosure of the identity of informants, disclosure of Giglio materials, production of Jencks Act material (id. ¶¶ 9-67), and to suppress physical evidence (id. ¶¶ 68-71).

As with Ying Dong, the Government indicates that it has and will continue to produce discoverable materials (Docket No. 26, Bing Lu Response at 6, 7).   The Government also moved for reciprocal discovery from Bing Lu (Docket No. 26, Bing Lu Response at 13-14).

*Bing Lu's Motion to Suppress*

Mr. Bing Lu moves to suppress physical evidence, since defense counsel did not have the search warrant application to determine if probable cause existed to justify the search (Docket No. 25, Def. Atty. Affirm. ¶¶ 68-71, 71).  The Government counters that, due to the change in counsel, that Bing Lu was provided with the search warrant application and, if necessary, another copy of the application can be given to new counsel (Docket No. 26, Bing Lu Response at 12-13).  In any event, the Government concludes that all legal requirements were met to justify the warrant and subsequent search (<u>id.</u>).

## DISCUSSION

I.     Bill of Particulars

Both defendants seek Bills of Particulars.  Both defendants seeks particulars about the events charged in the two-count Indictment (<u>see</u> <u>id.</u>, Ex. B, Nos. 2-4; Docket No. 25, Bing Lu Def. Atty. Aff. ¶¶ 5-6).  Counsel for Ying Dong argued that it was not clear which part of 18 U.S.C. § 2424(a) (the prostitution or immoral acts) was being charged (<u>see also</u> Docket No. 24, Ex. B, Nos. 1-3).

The Government contends as to each defendant that the Indictment and accompanying (and on-going) discovery is sufficient and Bills of Particulars are unwarranted (Docket No. 27, Ying Dong Response at 4; Docket No. 26, Bing Lu Response at 2).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars, and it is within this Court's discretion to order such a filing, <u>Wong Tai v. United States</u>, 273 U.S. 77, 82 (1927) (Docket No. 27, Ying Dong Response at 5; Docket No. 26, Bing Lu Response at 3).  Bills of Particulars are to be used only to protect a

4

defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990). The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977), nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).

As for the details about commission of the offenses alleged in the Indictment, the pleading and the subsequent discovery provides sufficient particularization to not warrant a Bill of Particulars. One subject deserves discussion. Ying Dong sought the legal definition of "prostitution" under 18 U.S.C. § 2424(a), charged in the second count of the Indictment (Docket No. 24, Ex. B, No. 1), arguing during oral argument she was not sure which part of that statute she was being charged with, under the "prostitution" or the "other immoral purpose" provision. Section 2424(a), a provision of the Mann Act, outlaws the failure to file a factual statement about alien, namely

"Whoever keeps, maintains, controls, supports, or harbors in any house or place for the purpose of prostitution, or for any other immoral purpose, any individual, knowing or in reckless disregard of the fact that the individual is an alien, shall file with the Commissioner of Immigration and Naturalization a statement in writing setting forth the name of such individual, the place at which that individual is kept, and all facts as to the date of that individual's entry into the United States, the port through which that individual entered, that individual's age, nationality, and parentage, and concerning that individual's procuration to come to this country within the knowledge of such person; and

"Whoever fails within five business days after commencing to keep, maintain, control, support, or harbor in any house or place for the purpose of prostitution, or for any other immoral purpose, any alien individual, to file such statement concerning such alien individual with the Commissioner of Immigration and Naturalization; or

> "Whoever knowingly and willfully states falsely or fails to disclose in such
> statement any fact within that person's knowledge or belief with reference to the
> age, nationality, or parentage of any such alien individual, or concerning that
> individual's procuration to come to this country,"

18 U.S.C. § 2424(a). The elements of an offense under this statute does not appear to distinguish between prostitution or keeping a place for other immoral purpose. Those elements include keeping a place for prostitution or other immoral purpose, failure of that keeper to register an alien prostitute (or an alien engaged in other immoral purposes) that the keeper was harboring, see United States v. Horton, 328 F.2d 132, 133-34 (3d Cir.), cert. denied, 377 U.S. 970 (1964). Ying Dong's motion, in effect, seeks from the Government legal definitions and conclusions of law, but those are beyond the scope of a Bill of Particulars, see United States v. Tucker, 262 F. Supp. 305, 308 (S.D.N.Y. 1966); United States v. Luros, 243 F. Supp. 160, 172 (N.D. Iowa) (Government is not required to state definitions of legal terms, there defining "obscene," "lewd," and similar terms in the obscenity statute, citing United States v. Frew, 187 F. Supp. 500, 508 (E.D. Mich. 1960)), cert. denied, 382 U.S. 956 (1965); 1 Charles A. Wright, Federal Practice and Procedure § 129, at 662 n.32 (Criminal 3d ed. 1999). Therefore, Ying Dong is not entitled to particularization of this point.

Upon review of the Indictment, the Court finds that defendants **are not** entitled to a Bill of Particulars inasmuch as each defendant is sufficiently advised of the charges against them to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy. Their motions for this relief are **denied**.

II.      Discovery Motions

Defendants seek various items of pretrial discovery.  Although there is no general

constitutional right to pretrial discovery in a federal criminal case, a defendant does have a

pretrial discovery right with respect to certain matters.  For example, under the Fifth

Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which

is material either to guilt or punishment.   In addition, the Government has certain disclosure

obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act,

18 U.S.C. § 3500.

A.      Brady Material

Defendants have requested that the Government disclose all materials potentially

favorable to each of them, including information to be used for the impeachment of the

Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its

progeny (Docket No. 24, Ying Dong Ex. A, Demand No. 16; Docket No. 25, Bing Lu Atty.

Affirm. ¶¶ 50-58, at pages 15-19).  Brady material, as those cases have come to define it,

includes all evidence which may be favorable to the defendant and material to the issue of guilt

or punishment.  Such evidence includes "[a]ny and all records and/or information which might be

helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information

revealing prior misconduct . . . attributed to the [Government's] witness."  United States v.

Kiszewski, 877 F.2d 210 (2d Cir. 1989).

The defendants' motions identify numerous specific categories of documents

encompassing both exculpatory and impeachment Brady materials which they seek to obtain.

The Government's written response is that it is willing to produce conviction records of

witnesses (Docket No. 26, Bing Lu Response at 7).  The Government acknowledges its <u>Brady</u>

obligation (<u>id.</u> at 8-10), agreeing to provide impeachment <u>Brady</u> materials pursuant to this

Court's scheduling Order (<u>id.</u> at 10-11).

It is unclear as to whether the Government's response included considerations regarding

"impeachment" <u>Brady</u> material as well as exculpatory <u>Brady</u> material.

Neither the Supreme Court, nor the Second Circuit[3], have ruled  directly on whether there

is a meaningful distinction between "exculpatory <u>Brady</u>" and :impeachment <u>Brady</u>" materials for

purposes relating to the time within which such information must be disclosed.  Several other

courts have discussed the issue at hand, which often arises in the context of a potential, if not

inherent, conflict between the Government's obligations to disclose under <u>Brady</u> and the

Government's right to delay disclosure of certain information pursuant to the Jencks Act.   Those

cases suggest that the court has some discretion with respect to directing the timing of such

disclosure.  <u>United States v. Campagnuolo</u>, 592 F.2d 852 (5th Cir. 1979) (the Court interpreted

<u>Brady</u> to require disclosure "at the appropriate" time, which often is prior to trial); <u>United States</u>

<u>v. Perez</u>, 870 F.2d 1222 (7th Cir. 1989) (the Government's delay in disclosing <u>Brady</u> material

violates due process only if the delay prevented the defendant from receiving a fair trial); <u>United</u>

<u>States v. Ziperstein</u>,  601 F.2d 281 (7th Cir. 1979) (a defendant receives a fair trial,

notwithstanding delayed disclosure of <u>Brady</u> material, as long as disclosure is made before it is

too late for the defendant to make use of any benefits of the evidence); <u>but see</u> <u>United States v.</u>

<u>Wilson</u>, 565 F. Supp. 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior

---

[3]In a footnote in its opinion in <u>Lucas v. Regan</u>, 503 F.2d 1, 3 n.1 (1974), the Second Circuit
stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady
be made before trial."

to trial); United States v. Biaggi, 675 F. Supp. 790 (S.D.N.Y. 1987) (information bearing on a witness' credibility may be turned over at the same time as [Jencks Act] materials); United States v. Feldman, 731 F. Supp. 1189 (S.D.N.Y. 1990) (it is sufficient for the Government to disclose Brady impeachment materials along with [Jencks Act] materials).

The Jencks Act relates only to "statements" made by Government witnesses.  Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles.  To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act.  United States v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979); but see United States v. Presser, 844 F.2d 1275 (6th Cir. 1988) (the Government may not be compelled to pretrial disclosure of Brady or Jencks material).  The record in this case does not reflect whether any of the materials withheld by the Government may be considered both Brady and Jencks material.  Certainly "impeachment Brady" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material.  Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents

can be avoided." <u>United States v. Percevault</u>, 490 F.2d 126 (2d Cir. 1974); <u>United States v. Green</u>, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex.  Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists,  in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

B.      Rule 404, 608 and 609 Evidence

Defendants request disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b) (Docket No. 25, Bing Lu Atty. Affirm. ¶ 48).  In particular, Ying Dong seeks her criminal history and character evidence (Docket No. 24, Ying Dong Ex. A, Demand Nos. 2, 12).  They also requests disclosure of all evidence of prior bad acts that the Government intends to use for impeachment of the defendant should he testify at trial, pursuant to Rules 608(b) and 609(a).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."  The Government has represented that it will provide all such material to defendants (<u>see</u> Docket No. 26, Bing Lu Response at 7).  This is sufficient in this case.

C.      Identity of Informants

Bing Lu seeks the pre-trial disclosure of the identity of any informants in this case (Docket No. 25, Bing Lu Atty. Affirm. ¶¶ 64-67).  The Government is not required to furnish the

identities of informants unless it is essential to the defense.  Raver v. United States, 353 U.S. 52,

60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089

(1988).  Nor does Rule 16 require the Government to disclose the names of witnesses prior to

trial.  United States v. Bejaia, 904 F.2d 137, 139 (2d. Cir.) cert. denied, 498 U.S. 921 (1990).

Moreover, the Government has stated that it believes that disclosure of the informant's

identification would subject the informant to personal danger from retribution by the defendant

and others.

Bing Lu has not established that the pre-trial disclosure of the identities of any informants

is essential to his defense.  This request is **denied**.

D.      Preservation of Evidence

Ying Dong also has requested preservation of rough notes and other evidence taken by

law enforcement agents involved (Docket No. 24, Ying Dong Ex. A, Demand No. 9).  The

Government disputes whether there is a basis for producing rough notes but has agreed to

preserve all items of evidence (Docket No. 27, Ying Dong Response at 4; cf. Docket No. 26,

Bing Lu Response at 7-8) (same).

E.      Disclosure of Jencks Material

Defendants seek immediate disclosure of material subject to the Jencks Act, 18 U.S.C.

§ 3500 (Docket No. 24, Ying Dong Ex. A, Demand No. 13; Docket No. 25, Bing Lu Atty.

Affirm. ¶¶ 59-63).  The Jencks Act governs the disclosure of information and statements relating

to the Government's witnesses.  Generally, according to the Jencks Act, the Government need

not disclose such information regarding its witnesses until after the witness has testified at trial.

In this case, the Government has agreed to disclose this information when it produces Brady

materials (Docket No. 26, Bing Lu Response at 11, 10).  Defendants have not established that prior disclosure of Jencks material any earlier than when the Government proposes to provide it is essential to the preparation of a defense in this case.

      F.     Other Discovery

          1.     Statements

Pursuant to Rule 16(a)(1)(A), defendants seek any written or oral statements made by the defendants which are within the possession custody or control of the Government, or which through the exercise of due diligence, may become known to the Government (Docket No. 24, Ying Dong Ex. A, Demand No. 1; Docket No. 25, Bing Lu Atty. Affirm. ¶ 9).

Rule 16(a)(1)(A) provides that, upon request, the Government must disclose any written or recorded statements made by a defendant, before or after arrest, in response to interrogation by any person known to the defendant to be a Government agent; and recorded testimony of the defendant before the grand jury which relates to the offense charged.[4]  Failure of the Government to disclose a defendant's statements to a Government agent may rise to the level of constitutional due process violation, Clewis v. Texas, 386 U.S. 707 (1967).

In this case, the Government has represented that it believes that it has already disclosed all statements made by the defendants and intends to produce others (Docket No. 27, Ying Dong Response at 2; Docket No. 26, Bing Lu Response at 6).  To the extent that the Government has not yet done so, pursuant to Rule 16 (a)(1)(A) the Government is hereby directed to produce all such statements made by the defendants.

---

[4]Rule 16 (a)(2) expressly provides that subdivision (a)(1) does not authorize disclosure of statements made by Government witnesses or prospective Government witnesses except as provided in 18 U.S.C. §3500, the Jencks Act.

2.      Statements of Co-Conspirators

Bing Lu has also requested production of all statements of any co-conspirator, whether

charged or uncharged (Docket No. 25, Bing Lu Atty. Affirm. ¶¶ 12, 13, 15).  This request is

**denied**.  It is well established that the statements of co-conspirators are not discoverable under

Rule 16(a).  In re United States, 834 F.2d 283, 286 (2d Cir. 1987); United States v. Percevault,

490 F.2d 126 (2d Cir. 1974); Green, supra, 144 F.R.D. at 638.  The Jencks Act provides the

exclusive procedure for discovering statements that Government witnesses have given to law

enforcement agencies.  U.S. v. Covello, 410 F.2d 536, 543 (2d Cir.), cert. denied, 396 U.S. 879

(1969).  Furthermore, while two defendants are charged in this Indictment, no conspiracy was

alleged between them or others.

3.      Documents and Tangible Objects

Pursuant to Rule 16(a)(1)(C), defendants also seek production of various documents,

books, records, photographs, and other tangible objects in the possession, custody or control of

the Government (Docket No. 25, Bing Lu Atty. Affirm. ¶¶ 30-34, 35, 37, 38; Docket No. 24,

Ying Dong Ex. A, Demand Nos. 6, 7).  Bing Lu also seeks transcripts of conversations that either

Bing Lu or the Government would deem relevant to this case (Docket No. 25, Bing Lu Atty.

Affirm. ¶¶ 40, 41).

The Government's response to these specific requests is that will produce (Docket

No. 27, Ying Dong Response at 3; No. 26, Bing Lu Response at 7).

4.      Examinations and Test Reports

Pursuant to Rule 16(a)(1)(D), the defendants have requested the production of the results

of any physical or mental examinations or scientific tests (Docket No. 24, Ying Dong Ex. A,

13

Demand No. 3; Docket No. 25, Bing Lu Atty. Affirm. ¶ 16).  The Government has not responded

to these requests, but stated in one response a general invitation for defendants to identify

particular items of discovery that the Government will produce or permit its inspection at a

mutually agreed time (Docket No. 27, Ying Dong Response at 2).

     5.     Hearsay Evidence

Bing Lu seeks disclosure of any hearsay evidence intended to be introduced by the

Government at trial (Docket No. 25, Bing Lu Atty. Affirm. ¶ 11).  There is no legal or factual

basis requiring disclosure of such material in this case.  See Green, supra, 144 F.R.D. at 638.

Thus, this request is **denied**.

     6.     Rule 12(d)(2) Request

Pursuant to Rule 12(d)(2), Ying Dong requests that the Government give notice of its

intention to use at trial any evidence which is discoverable under Rule 16 (Docket No. 24, Ying

Dong Ex. A, Demand No. 11).  Such notice, under the rules, avoids the necessity of a defendant

having to move to suppress evidence which the Government does not intend to use.

The Government has responded to this request partially, only indicating that materials

maintained by the Immigration and Customs Enforcement would be used by the Government at

trial (Docket No. 27, Ying Dong Response at 3).

This request is hereby **granted**.

     8.     Identification Procedures

Defendants seek disclosure of any visual or audio identification procedures utilized in this

case; specifying the procedure, the participants and the circumstances; any visual or audible

representation of a person or voice used for identification purposes (Docket No. 24, Ying Dong Ex. A, Demand No. 5; Docket No. 25, Bing Lu Atty. Affirm. ¶ 18).

The Government has not directly responded to this specific request.

The record in this case does not reflect whether or not any such procedures were used. The Government's complete lack of response on this issue does not provide the court with any assistance in this regard.  In any event, inasmuch as pretrial identification issues may raise questions of due process under the Fifth and Fourteenth Amendments, with the exception of the identity of any informant or witness, the Government is directed to provide the defendants with information regarding any visual or audio identification procedures used in this case.  See Green, supra, 144 F.R.D. at 639.

        9.      Disclosure of Expert Materials

Pursuant to Rule 16(a)(1)(E), defendants seek a written summary of any expert testimony that the Government intends to use in its direct case, along with the expert's qualifications, and the basis for the expert's opinion, whether or not the expert files a report (Docket No. 24, Ying Dong Ex. A, Demand No. 4; Docket No. 25, Bing Lu Atty. Affirm. ¶¶ 17, 49).

Once again, the Government fails to directly respond to this request in any way.

This request is **granted**.

III.    Government's Reciprocal Discovery Motions

As for both defendants, the Government moves for reciprocal discovery (Docket No. 26, Bing Lu Response at 13-14; Docket No. 27, Ying Dong Response at 8-9), without objection by either defendant.  Under Rule 16, the Government is entitled to production of documents in defendant's possession that either defendant intends to use in their respective case-in-chief.

Defendants are reminded of their respective obligations under Rule 16 to produce pursuant to the Government's notice for discovery, therefore, the Government's motions are **granted**.

IV.     Bing Lu's Motion to Suppress

Bing Lu's suppression motion is based upon defense counsel not seeing the search warrant application in order to determine whether there was probable cause that a crime was committed (<u>see</u> Docket No. 25, Def. Atty. Affirm. ¶ 71).  The Government argues that it produced that application to Bing Lu's former counsel and that it was willing to submit it (again) to new counsel and then respond (if necessary) to a renewed motion to suppress (Docket No. 26, Bing Lu Response at 12-13).

If it has not already done so, the Government **shall produce** another copy of the search warrant application to Bing Lu forthwith.  Bing Lu's motion to suppress is **denied without prejudice** to be renewed upon defense counsel's review of the application and determination of whether such a motion is necessary.

CONCLUSION

For the reasons stated above, defendant Ying Dong's omnibus motion (Docket No. 24) is **granted in part, denied in part.**  Bing Lu's omnibus motion (Docket No. 25) is **granted in part, denied in part** as discussed above for the respective motions; in particular, Bing Lu's motion to suppress is **denied without prejudice to renew** upon defense counsel review of the search warrant application.  Both defendants' motions for filing of Bills of Particulars are **denied**.  On the Government's motion for reciprocal discovery from defendant Ying Dong (Docket No. 27, Response at 8-9) and from defendant Bing Lu (Docket No. 26, Response at 13-14), those motions are **granted**.

16

So Ordered.

_____/s/ Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

Dated:  Buffalo, New York
        July 17, 2008